Judge Uisderwood
delivered the opinion of the Court.
These casos have been brought up, upon the same record. They were tried at the same time, in the court below, and originated in connected transactions, so that the evidence in one, was applicable tb most, if not all the rest. They will therefore be considered together here. The facts out of which these suits grew, arc these. Alexander D. Orr, being embarassed, conveyed his estate, to James Hughes, in part, for the benefit of his, Orr’s creditors. Judgments were obtained against Hughes, in bis own right,and as trustee. Executions which issued thereon, were levied on sundry slaves, which Orr, had conveyed to Hughes, as part of the trust property. These slaves were sold by the sheriff, under executions, on the 14th of October, 1817, upon a credit of three months, for the sum of $2058, and John Pickett and Baldwin B, Stith executed sale bonds for the amount, Pickett as principal, and Stith as surety. Before the sale took place, A. D. Orr was solicitous, that Pickett and Stith should befriend him, and his family, so far as to purchase the slaves, for the benefit of Orr’s family. It seems at first, to have been agreed by the parties, that Stith should become the purchaser, and Pickett enter himself as surety, in the sple bonds, but upon considering the probability, that the slaves might not be so safe, in case Stith purchased them, owing to the existence of some large claim against him, it was determined that Pickett should become the purchaser, and Stith enter as surety. A. D. Orr, relied on his brother Benjamin G. Orr, of Washington City, to furnish the money, with which to discharge the sale bonds, and thus to secure thr *270 slave?, for the use of A. D. Orr’s family. But in case ^rr to furnish the money, in time to discharge the sale bonds, then Pickett- was to sell the-slaves; and least they might [jrove insufficient, A. D. Orr, gave Pickett a lien on Dennis, a slave not sold by the sheriff, to make up any deficiency.
Stith, (who was acting as the agent, of B. G. Orr*. in collecting a large debt, which he had against Do-byns,) received a letter, from B. G. Orr, dated 13th November, 1817, by which Stith was authorized to use the money, due by Dobyns, for the “redemption of the negroes,” provided the possession be given, and title be made, in trust to lieutenant John D. Orr, for the benefit of his mother and her daughters, Mary and Norah, so that no possible claim can be set up by' the creditors of Colonel Orr,” (meaning Alexander D. Orr.) Another part of the letter, says, “I pray you to apply this money, to no other purpose, than the one designated, and to be particular,, in having the title properly vested, in J. D. Orr, in trust as aforesaid.
Stith collected from Dobyns, only $1200. Stith also received §400 which a Mr. Linton of New-Or« leans had forwarded to Mary B. wife of A. D. Orr, to aid her. These sums, amounting to §1600, were applied by Stith, in part discharge of the sale bonds-executed by him-and Pickett.
To meet the balance due on the sale bonds, the sum &f §500 was borrowed by Pickett, as principal, with A. D. Orr as surety, from Jacob Slack, and the bonds were discharged; at which time, Stith says it was agreed and understood by Pickett and himself, that the whole of the slaves belonged to Mary B. Orr, wife of A. D. Orr, and her daughters Mary and Norah, but that Pickett and himself had a lien on the slaves, for the $500 borrowed of Slack, but for no other purpose. Stith states that Pickett had seen and read the letter from B. G. Orr before the money was paid in discharge of the sale bonds. Part of the slaves were sold in the town of Washington, and part on the farm where A. D. Orr lived. Those which were sold in Washington returned to the farm, and the whole there remained with the family of A. D. *271 Orr. Who controled them, and who should be considered as possessed of them, are questions involved in •perplexity, in consequence of the contradictory of the evidence.
■It is proved that A. D. Orr, both claimed and disclaimed them. It is proved that his wife and one of his daughters exercised acts of ownership over a part of the slaves, as their separate property. It is proved that Jno. t). Orr, the person designated as the trustee by Ben. G- Orr, within less than five years after the sale of the slaves by the sheriif, took possession of them, and that he controled them as trustee, for his mother, Mary B. the wife of A. D. Orr, and his sis* ters, Mary and Norah, whilst all this is disproved by said Jno. D. Orr, as positively as it can be.
The statements on this subject, by the relations and members of the family, present contradictions well calculated to obscure the truth. They exhibit, in glaring colors, the bad feeling which seldom fails to distort every thing in family quarrels. Some of the neighbors regarded the slaves as possessed by and subject to the control of A. D. Orr, even after the date of the sale by the sheriff, while others looked upon them as the separate property of his wife and daughters. The slaves were never conveyed to John D. Orr, in trust, as required by the letter of Ben. G. Orr. It does not appear that Pickett ever relinquished to any one, the title which he acquired by his purchase at the sheriff’s sale.
In this condition of the negroes, judgments were obtained against A. D. Orr, and on the 10th of June, 1823, four executions issued, one in favor of John Pickett, two in favor of E. Gill, and one in favor of. D. Perrine, all of which were levied on Bill, one of the slaves purchased by said Pickeit, at the sheriff’s sale as aforesaid, and he was sold by the sheriff and purchased bv William B. Orr, who executed a sale bond, with William Payne his surety.
The land on which A. D. Orr and his family resided, had been conveyed to John Chambers, in trust, to secure the payment of a debt due Russell. Henry Ree paid Chambers $620, in part of the debt, on the .1st of July, 1813. and the balance, amounting to $418, *272 ohthc20thof January, 1814. At which last date, Chambers executed to Lee an instrument of writing, promising to sel! the land in one year, and pay over the proceeds (o Lee, not exceeding, however, the money and interest advanced by Lee, or to release the land to James Hughes, (from whom Chambers had received the title, said Hughes being trustee for Orr and his creditors, as already mentioned; as Lee might direct, within the year. After'the year expired, Chambers was at liberty to release to Hughes, without Lee’s interposition, regarding Lee’s payment as a payment by Hughes. If, before Lee gave any directions, Hughes tendered the debt, to secure which, the trust was created, Chambers was to receive the money and pay it over to Lee. Chambers did not sell the land, nor did he release the title to Hughes, within the year.
Some years thereafter, at the request of A. D. Orr, and Jno. D. Orr, Chambers sold the land and conveyed it to John D. Orr, he being the purchaser at the sale; Lee having, in the meantime, transferred Chambers’s obligation toN. Warfield, who had transferred the same to John D. Orr. Lee states that he received the $620, which he first paid Chambers, from A. D. Orr, who stated that part of it was his and the balance was furnished by Ben. G. Orr, who intended to furnish enough to secure the land for Mrs. Orr, the wife of A. D. Orf, Soon after the payment of the $620, by Lee to Chambers, B. G. Orr forwarded to Lee, $800, out of which he paid Chambers the balance of the debt due Russell, to-wit: $418, and handed the residue to A. D. Orr, who claimed it on account of that much of the $620 furnished out of his funds.
In January, 1823, John I). Orr mortgaged the land to John Pickett.
In June, 1823, Alex. D. Orr mortgaged the land and all the slaves, toN. Warfield.
In October, 1823, the first suit named, was instituted by Mary B. Órr, wife of A. D. Orr, and her daughters, Mary B. Andrews and Norah E. Griffin, they having, previous to that date, married, (the husbands of these females uniting with them as complain- *273 ¡inis; the object of which suit was, to compel Pickett, Stith and John D. Orr, pursuant to the letter of Ben. 0-. Orr, to carry into effect the trust therein plated, and to quiet their title to the slaves, and also to.injoin a sale of one of the slaves taken to satisfy executions in favor of Pickett, Slack and Modte. The circuit court dismissed'the bill in this case, leaving the complainants to their legal remedy, as said in the decree,and awarded ten per cent, damages against them. The complainants appealed.
In November, 1823, N. Warfield instituted the second suit named against the ^complainants in the first suit, and against John Pickett, for the purpose of foreclosing his, Warfield’s, mortgage. He afterwards amended iiis bill, stating that the slave Bill, had been sold to satisfy executions in favor of Pickett, Perrine and Gill, and that Wat. B. Grr had purchased him and executed sale bonds. He made all of them parties, and prayed for and obtained an injunction suspending the collection of the sale bonds. In this case, Andrews and wife and Griffin and wife, made their answer a cross bill against A. D. Orr and wife, and others, and prayed for a division of the slaves, and the assignment of their part to them, in severalty. The circuit court dismissed the bill of Warfield, with cosis, and also dismissed the cross bill. Warfield has appealed.
,Thc last suit mentioned, was instituted by A. D» Orr, and Mary B. bis wife,in February, 1825, against John Pickett and John D. Orr, with a view to obtain the title .of the land from Pickett, which had been mortgaged to him, by J. I). Orr, and to cause the same to be vested in a trustee, for the use of Mrs. Orr, who claimed it, in virtue of the advances made for her benefit, by Benjamin G. Orr,'and likewise, on account of promises made to her, by which she was induced to surrender her dower, in the lands conveyed by her husband, injjtrust to Hughes. One other object of the bill, was to prevent'Pinkett, from foreclosing the mortgage, which John D. Orr, had executed, and so far, the bill possessed the qualities of a bill of interpleader, and seems to have been filed, as an answer to Pickett’s bill, seeking a foreclosure of *274 the mortgage to him. The circuit court, dismissed the bill with costs, and the complainants have appealed.
Óh'dticcllor will injüin sala about to bo made under execution if applicant for injunction have only equitable interest in property. Otherwise, there Would be no remedy.
In all the cases mentioned, Pickett and others, resisted the relief sought, upon the grounds, that they were creditors of Alexander D. Orr, that no trust had -fiver been created, in favour of the complainants, and -that A. D. 'Orr’s possession of the slaves, for five years, subsequent to the purchase of them by Pickett, rendered them liable to tho payment of said Orr’s debts.
Pickett resisted Warfield’s mortgage, Vy alleging that it was fraudulent,in respect to creditors and purchasers, and he insists, that the mortgage made to him, by John D. Orr, was in good faith, without an3' knowledge on his part, of the equity relied on, by the wife of A. D. Orr.
Before wc proceed to investigate the. merits of .the various controversies presented by the record, we 'deem it proper to remark, that We do not concur in "the opinion, expressed by the circuit court, in (he first case, relative to the 'remedy, which the complainants had at law-
It Iras, we admit, been derided, that a court of equity will not interpose, *o enjoin a-sale about to be made by an officer, in virtue of an execution. But all the cases of this kind, which we. have examined, have been such, that the complainants asking the injunction,claimed to be the holders oí the legal title to the property about to be sold. Their bills proved, that if their allegations were true, common law tribunals, would afford them remedy. Not so, in the present cases. Here'the complainants do not claim any thing more than an equitable interest in the property, and they call on a court of chancery, to protect their equity. Tims situated, if they really have rights, to a use in the property, unles§ the chancellor will interpose, (0 protect their rights, they ars reme-diless.
We are of opinion then, that, it is not improper» upon the cases stated in the bills, for a court of equity to entertain jurisdiction of these and like *275 causes, and that there was nothing- -erroneous, in in-joining the sales, if the facts, alleged, were true.
We shall first attend to the controversy relative to the slaves. At the time they were sold, under the executions against Hughes and purchased by Pickett, there was no agreement or promise, on the part of B. G. Orr, to advance money to pay for them, when Pickett’s sale bond became due. Stith, the agent foe-B. G. Orr, did agree that he would advance any-money be might have in his hands, belonging to Orr, for that purpose, and risk the confirmation- of such appropriation by Orr, thereafter. B. G. Orr’s letter, of November, is the first intimation from him, that ho. was willing to advance money, for the purpose of securing the slaves to the use of the wife of A. D.' Orr and her daughters. Pickett’s purchase was» eomplete in the preceding October.'
It may be safely affirmed, that the title to (he slaves-was vested in Pickett, without any agreement, that he was to hold them for the use of Mrs. Orr and her daughters. All those allegations of the different bills, which assert that Pickett made the purchase of the slaves, for Mrs. Orr, and her two daughters, or as their trustee, are groundless.
That he purchased as the friend of the family and with a promise on his part, in case the money was furnished to discharge his sale bond, that he would then vest the title for the benefitof A. D. Orr’s family, so that the slaves would not, thereafter, be taken to pay his debts, we have no doubt. The fulfilment of, this promise depended- upon contingencies, which might never happen.' We do not perceive any equitable interest resulting to any of the complainants, from the purchase made by Pickett. If they have any such interest, it. must be found to originate in some subsequent transaction. In the expectation that such an interest might, thereafter, accrue, Pickett, no doubt,, permitted the slaves, purchased'by him, to remain with the family of A. D. Orr, and it-, does not appear, that he ever stipulated with Orr,. or any member of his family, the terms upon which the slaves were permitted to remain,
A purchases slaves under execution, and executes sale bond, with an understanding that, if the money is furnished to pay the bond, the slaves are to be settled on the wife and daughters of S, a. portion of themoney is furnished, received-by A, and re-applied, the wife and daughters of B, acquire an interest Which will be protected by the chancellor, and A will be considered as trustee, with a lien for the balance of the amount of the sale bond interest.
We are of opinion tha.t Mrs. Orr, and her daughters, did acquire such an interest in the slaves, by the payment of the $¡1 600, furnished by B. O'. Orr and Linton, as requires the interposition of the chancellor in their behalf, against Pickett. At the time this money was paid, the legal title to lire slaves was .in Pickett. He then agreed, as Stilh deposes,’that the slaves belonged to Mrs. Orr and her daughters; subject, however, to a lien in his favor, to secure the payment of the $500, borrowed of Slack. To compel Pickett to execute this agreement, would comport with the strictest morality, and we apprehend to-do it, would not violate any principle of law. The <¶> 1600 having been paid on the sale bond, is regarded as a payment to Pickett. For that consideration, he agreed, that all the slaves, when he should be paid $500 more, were Mrs. Orr’s and her daughters. He knew that the money had been furnished with a view to secure the slaves to Mrs. Orr anci her daughters, it* such a manner, that they should not, thereafter, be liable to pay the debts of A. D. Orr. If he acted in good faith, he could not have accepted the $1600,. without honestly intendingat the lime,to surrendering legal title, for the benefit of Mrs. Orr and her daughters, as soon as the $500 were paid.
We are, therefore, of opinion, that in respect ta Picket, the proper decree would be, to order a sale of so many of the slaves, as may be sufficient to secure the $500, and interest thereon, from the time it was borrowed by Slack, and then to compel him tu convey the remaining slaves, (which ¡nay first be divided into three lots) one third to a trustee, to deselected by the court, for the separate uso of Mrs. Orr j one ^third to a trustee, for the separate use of her daughter Mary, and the other third to a trustee, for the separate use of her daughter Norah.
The slave Maria, and her increase,, claimed by-Pickett,, must he-surrendered by hfm, and should be disposed of as the other slaves. He had no right to purchase that slave from A. D. Orr. The title was in Pickett, and Á. D. Orr had no interest which he could sell, at the date of the contract. Pickett had previously stipulated, that all the slaves subject (c. *277 his lien for the §500, were the property of Mrs. Orr and her daughters. This was clone upon an ample and valuable consideration. It would be a fraud, upon their rights, to permit him, under such circumstances, to hold as a purchaser under A. D. Orr, whose insolvency was known to Pickett.
rjiru lce ,. or daughters, cannot, bY trust property to remain 5 * years in pos-band and*10*" family, to subject it to his own debts against hos-band>
We lóok upon Pickett, as holding the’title to the alaves, as trustee, for the use of Mrs. Orr' and her daughters, from the time that the §1600 were appropriated to the payment of so much of the sale bonds, by Pickett. It was virtually, from that date, a purchase of the slaves by Pickett, with the money of Mrs. Orr and her daughters, for them; and, if he took the title in his own name, having used their money, the law creates a trust. That the transaction should be so considered, is clear from the fact, that the slaves were to be sold again, to pay the sale bond, if the money was not furnished, and that any deficiency should be made up out of Dennis.
The whole of the evidence tends to prove, that Pickett was pot, in the first instance, a purchaser at the sheriff’s sale, for himself. He was then the friend of Á. D. Orr, and his family; and subsequently, in our opinion, he became the trustee of Mrs. Orr and her daughters. As trustee for them, he- cannot be permitted, by suffering the property to remain five years in the possession of A. D. Orr, to subject it to the satisfaction of execution's against him, in favor of Pickett.
i lekett, by permitting the property to remain in tile service of A. D. Orr and his family, after the purchase at the sheriff’s sale, should be regarded as intending to execute the trust, by allowing the use of the property to the intended cestui que-trusts.
If it be conceded, that Pickett may permit A. D. Orr and his family, to possess the slaves for five years* and thereby subject them to the payment of his demands, against A. D. Orr, it would be'to allow him to prove truant to the title which he held for the use of others; and thereby to secure his own debts, against an insolvent.individual. We could not-concede such a right to Pickett, without setting a precedent, which would tolerate fraud* The attempt ©n the part of *278 Picket;, to satisfy his executions, by a sale of ííhj=. slaves, cannot be countenanced in a court of char.? eery.
Trustee, for feme covert, will not be permitted to mismanage trust estate, so as to subject it to bis demands vs. husband,tho> it may be subject to other creditors. Qumre. Would not trustee in the latter event, be personally liable to celvi que use.
80 long as person in possession of slaves acknowledges title ol'owner, possession not adverse, and on refusal to surrender them on demand, detin-ue lies, altbo’ possession may have been continued more than 5 years, .
Biuler statute Cyear^co'™3 timied adverse posses-holde^title"1 0 ’ to slave a-f^oSd^those6 laboring un-derdisabili-fóTinP=tututcf excepted. ’
*278 But Pickett’s pecular situation, presents him in an attitude, materially different from- that occupied by the other creditors of A. D; Orr; while it would be unjust to permit Pickett to use the money furnished by B. G. Orr and Linton, to discharge his sale bonds, and then, so to mismanage the title to the slaves which was vested in him, as again to make the slaves subject to the payment of A. D. Orr’s debts, in the hands of Pickett, other creditors might, by the plainest principles of law, have a right to the satisfaction of their debts, out of the property.
If Pickett, after purchasing the slaves, had delivered them to A. D. Orr, on loan, and permitted them to remain and continue, five years in A. D. Orr’s pos* session, there is no doubt but that they would be subject to the payment of executions, against A. D. Orr* in favor of his creditors, Pickett excepted. This would be the result under the operation of the statute of frauds.
So long as Orr held possession of the slaves, acknowledging Pickett’s title, the possession would not be adverse to Pickett; and, if the slaves were not delivered to him upon demand, he might maintain deti-nue, or any appropriate action, and recover, although Orr’s possession may have been continued more than five years. There is a striking difference between the condition of Pickett, and the other creditors of A. D. Orr.
It is important to inquire, whether the slaves purchased by Pickett.are subject to the payment of A. D. Orr’s debt’s, due Slack,&c.inconsequence of their having remained in the possession of Orr.
Under the statute of limitations, five years continue(j adverse possession, vests in the holder, a comP^T title-io a slave against all the world; those laboring under some disability provided for in the statute, excepted. Under the statute of frauds, five years conhnued possession of a slave, holding the slave upon loan, or under the title of another, who claims a re5 *279 t-ervation or limitation, of an use, or property in the ■slave, is rendered fraudulent, as to creditors and purchasers, and the absolute property, declared to be with the possession, unless the loan, reservation, or limitation of use, or property, were declared by will or deed, in writing, proved and recorded. Has A. D. Orr’s possession been such under either of the statutes, as will subject the slaves to the payment of his debts? Neither of those statutes will operate, unless there has been a continuous possession, for live years.
u- ons c]ajmi ‘,ns Í0 #0,t.a® ]rot regularly constituted sacb by deedi ^ssionof08" slaves, it breaks that, p08f,essioo of def’tiji exp-?utl0n> which duration”8 would subject the slaves to
vico of family subject to oc-casionalor-Member ont possession in aTintíose61* who hive b0 real owner of „-m «houTíT" bo regarded tdo^/th*’al* control*stave and cause it work asbu So^ifTitle be, in another ^ bound to hoM it for ose of í/oa'considcr-ed in infant ws/'atthoM’a-ther directs labour of saye.
*279 After a deliberate consideration of-the conflicting: and contradictory evidence, wo have come to the con-elusion, that A. D. Orr’s possession has ,not been of that character. We are of opinion, thathis possession was broken by the acts'of John D. Orr, in the char-actor of trustee; and, although, he was never legally constituted such, according to the requsitions of B. • Orrs letter, yet gaining possession of the slaves, and assuming to control them, in the character of Irustee, was sufficient to break the continuous possession, which the law requires in A. D. Orr, before possession alone can give him title, or subject the properly to the payment of his debts.
Besides, there are positive acts of ownership, and control, over part of the slaves, at least, shewn to llave been exercised by the wife and daughters of A. D. Orr, which strongly tend to provea possession with them, in exclusion to the possession of A. D. Orr, _
If it were conceded, that the possession of the wife would'be the possession of the husband, there would Still be ground to maintain the possession of the -daughters, as distinct from that of the father,
Where there are many persons living together, constituting one faimily, and there are slaves in the service of the family, subject to the occasional orders ■of each member of it, the possession in law should bo considered and regarded, as in those of the family, who have right to the property, in such a case if an infant be the real owner, and have title to a slave, the infant should be regarded as in possession, although the father controls the slave, and causes it to *280 work as he pleases. So also, if the title be notin *he bifnnt, but in another, who is bound to hold the title, for the use of the infant,1 then we are of opinion* the possession should still be considered with the infant>as cestui que use, although the hither directs and superintends the labor of the slave.
sduk chí¡and dren live together, and slaves wait on taisouously" asordered, and father, as Jy,directs™1' most important employ-llayM °till possession gardetTasVn those offam-ily^wht) have 1 e'
Whenever ti-legal^or^equitable, is in with'others seemsto be’ enjoying use in common, law isdn'that one, and his creditors reach°pvoperfy,
These doctrines are vjrtualy recognized in the case of Kenningham vs. M‘LaughIin, III. Monroe, 30; for surely it can make no difference, whether the interest 0f the infant be equitable or legal.
^ Paren^s an(J adult children, live together, and slaves wait on the family promiscuously, as they may be ordered, and the father as head of |thc family, should superintend and direct the most important employments of the slaves, still the possession should bq. regarded, as being with those of the family, who [1!ive t¡t]e. Where many persons are in the enjoy-menl- °f the use of property, be theNi adults, or infants in part, those who trust upon the faith of the property are bound to discriminate, and to ascertain at their Pertl> who has title among those using, the property.
When the title whether it be legal or equitable, is found to be in one, who, with others, seems to be enjoy-jng use ¡n common) j.h© possession in law, is fixed with that one having title, and his creditors alone can reach the property.
We know it may often be a difficult matter, to ascertain, when inamy have the use of property, w^° has the title; and hence, it is common to con-elude, that he, who is most active in the management of the common stock, to all appearance, and who, as llea(j 0fthe family,controls it most, is legally possessed, an(* that the statutes of limitations and frauds, run and operate, so as to give him title, and to subject the property to his debts. But such a conclusion, is, in our °P'nion, not warranted by law'. To tolerate it, would,x in many cases, produce flagrant injustice, which may be avoided, by observing the rules we have recognized-. Nor can we perceive that any evils will result from the principles laid down by us, for fhey do not touch cases, where the use of property *281 continues five years, with one or more persons, having no title, equitable or legal, in such cases, the continued use, for five years, will constitute such possession in him or them, enjoying the use, so as to subject the property to executions against him, or them, and will, effectually, under the statutes,prevent setting up titles in any one, who did not participate in the-use of the property, in order to protect if against the creditors of him or them, enjoying the. use for five years.
Applying these doctrines to the present case, we are inclined to the opinion, that they protect the interests of A. D. Orr’s daughters, Mary, and Norab, even if John D. Orr’s possession had not broken the continuity of the possession, which it. is contended, existed in-A. D. Orr.
It would lengthen this opinion, without benefit, to assign all the reasons, and to state all the facts, which have induced us to assume it, as proved, that Johu P. Orr did, in the character of trustee, for his tno-ther and sisters, take possession of the slaves, in part, and thereby, break the chain of his father’s actual possession, if such possession were conceded to be exclusively in the father, anterior to the taking possession by J. D. Orr. We will only remark, that the record shews, that J. D. Orr, has involved himself, on his father’s account, in debts, and that we can perceive an interest, which might operate with him, to induce a course of conduct, unfriendly to the success of the claims of his mother and sisters.
It follows, from the foregoing view of the subject, that A. D. Orr’s possession of the slaves, has not been of such unequivocal continuous character, as to render the slaves liable to executions against him, in favor of Slack and Moore. The levy of their executions on the slaves, or any one of them, was, therefore, illegal,and as Mrs. Orr and he'r daughters,held only an equitable interest, the legal title abiding in Pickett, the court should have restrained Slack and Moore, from collecting their executions, by a sale of the property. The same remark is applicable to the execution of Pickett, which he caused to be levied on the slaves, and which he was proceeding to collect. *282 'by a shle of the slaves. Pickett, after consenting to the application of the $1600, in discharge of so much of his sale bonds, and agreeing that the slaves belonged toMrs. Orr and her daughters, had no right to malte a purchase of any one of them, thereafter, from A. D. Orr. He acted contrary to his duty, and to the-prejudice of their rights, in doing so. He should, therefore, be compelled to surrender, the woman and her children, claimed by him, under purchase, from A. D. Orr, and to account for their hire.* But as an off-set to the hire, he should be allowed, as far as it will go,all reasonable charges for expenses, in raising the'young children, until they were able to earn a support. - Pickett should be compelled to relinquish the legal title, to these as well as to the other slaves, but not until the $500, borrowed of Slack, and interest thereon, is secured to him. His lien on the slaves for that sum should be respected.
We have not taken into consideration, the controversy, respecting the slave, Bill, and nothing, herein contained, is to be construed, to have any effect upon any suit now pending, in relation to the slave, Bill, or the price for which he sold, orany suit, which, hereafter, may be instituted about said slave, or the sum -lie sold for.
The circuit court erred in the first suit, mentioned, ill not. granting the complainants, relief, according to -the principles -of this opinion. If it had even been proper to-dismiss the bill, it was erroneous to award damages, upon the dissolution of the injunction, because the injunction was not of that character, upon the dissolution of which, damages could rightly be awarded, under the statute. See the case of Thomas’s trustees vs. Brashear, IV. Monroe, 67.
Wherefore, the decree of the circuit court is reversed, and the cause-remanded, with directions to enter a decree, in conformity to the principles of this -opinion.
The appellants must recover their costs.-
.Jn the suit instituted by N. Warfield, there is error in discharging the injunction, so far as damages were decreed against Warfield. The decree for damages against him,-is-the only error, for the bill of Warfield *283 was properly dismissed, because At D. Orr-had no title to the land, or slaves, which he could convey, to say nothing as to the invalidity of the mortgage, on other grounds. But for the error in respect to the damages, the decree, awarding them must be reversed with costs.
Wickliffe, Talbot and Mills, for Orr, &c. ¡.Haggin and.-s Grítteñden, .for,Pickett, &c.
As to the suit, instituted ’by A. DI Orr and wife, against John Pickett and J. D. Orr, to obtain- the. title to the land mortgaged by J. D.' Orr, to Pickett, . we are of opinion that the circuit court correctly dismissed the complainant’s bill. There is - no proof in . this case, which shews, that Pickett had any notice-of. Mrs. Orr’s equity; which is, in itself,’ of doubtful-character, on account of A. D. Orr- having, out of his own funds, paid'a partof.dhe-monéy to Lee, which secured the land, claimed by Mrs. Orr. But it matters not, how deserving may be the-character of-Mrs. Orr’s equity, Pickett denies ■ all knowledge of it, . until after he obtained the title from J. D. Orr, as a bona fide purchaser; and there is-no proof to. subvert-his answer..
Wherefore, the decree is affirmed with costs.